# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Firearms Owners Against Crime - : 
Institute for Legal, Legislative and : 
Educational Action, Landmark : 
Firearms LLC, and James Stoker, : 
                Petitioners : 
                 : 
            v. : No. 218 M.D. 2022
             : Argued: September 12, 2022
             : 
Colonel Robert Evanchick, : 
Commissioner Pennsylvania : 
State Police, : 
           Respondent : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE ELLEN CEISLER, Judge[1]
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION BY**
**SENIOR JUDGE LEADBETTER**            **FILED: March 6, 2023**

      Before the Court for disposition are three matters: (1) the Application for Summary and Special Relief in the Nature of a Writ of Mandamus and Declaratory and Permanent Injunctive Relief (Application for Summary Relief) filed by Firearms Owners Against Crime - Institute for Legal, Legislative and Educational Action, Landmark Firearms LLC, and James Stoker (Petitioners); (2) Preliminary Objections to the Amended Petition for Review filed by Colonel Robert Evanchick, Commissioner Pennsylvania State Police (PSP or Respondent); and (3) Petitioners' Partial Preliminary Objection to Respondent's Preliminary Objections. Petitioners

---

[1] This case was argued before a panel consisting of President Judge Cohn Jubelirer, Judge McCullough, and President Judge Emerita Leadbetter. Following argument, Judge McCullough recused herself in this matter. Judge Ceisler was assigned to consider the matter on the briefs as a member of the panel.

filed original and amended petitions for review in this Court's original jurisdiction in which they allege that PSP is not complying with certain provisions of the Pennsylvania Uniform Firearms Act of 1995, 18 Pa. C.S. §§ 6101-6128 (Firearms Act or Act). Specifically, Petitioners allege that PSP is understaffing its firearm background checks unit and, consequently, is failing to conduct "instantaneous" firearm background checks and to provide "immediate" responses to requesters. In both their Amended Petition and Application for Summary Relief, Petitioners request various forms of declaratory, injunctive, and mandamus relief compelling PSP to "comply with the Firearms Act."

In its preliminary objections, PSP asserts two demurrers and argues that Petitioners' claims are barred as a matter of law on several grounds, including sovereign immunity, lack of standing, and separation of powers. Petitioners have, in response, lodged a single preliminary objection to PSP's preliminary objections, arguing that PSP cannot raise the defenses of sovereign immunity and separation of powers by way of preliminary objection.

Upon review, we (1) overrule Petitioners' partial preliminary objection; (2) sustain PSP's first, second, and fifth preliminary objections; (3) dismiss, as moot, PSP's third and fourth preliminary objections; and (4) dismiss the above-captioned case.

## I. PROCEDURAL HISTORY

Petitioners filed their original petition for review on April 8, 2022, followed by an Application for Special Relief in the Form of a Preliminary Injunction under Pennsylvania Rule of Appellate Procedure 1532, Pa.R.A.P. 1532. PSP filed preliminary objections to the original petition for review on May 2, 2022. Petitioners filed their amended petition for review (Amended Petition) on May 10, 2022, after which this Court struck PSP's original preliminary objections as moot.

On May 12, 2022, a hearing was conducted on the Original Petition and Application for a Preliminary Injunction by a single judge, and the parties thereafter submitted briefs. On September 2, 2022, this Court granted Petitioners' Application for Preliminary Injunction, in part, concluding that PSP was in violation of the Firearms Act in failing to conduct background checks and provide results immediately. The Court enjoined PSP from further noncompliance with the Firearms Act and deferred ruling on the availability of any further relief until the expedited argument now before the Court. *See Firearm Owners Against Crime-Inst. for Legal, Legis. and Educ. Action v. Evanchick* (Pa. Cmwlth., No. 218 M.D. 2022, filed Sept. 2, 2022) (*Evanchick I*) (McCullough, J., single-judge op.).

On May 16, 2022, Petitioners filed their Application for Summary Relief, which PSP answered on May 31, 2022. On June 9, 2022, PSP filed preliminary objections to the Amended Petition for Review. On June 14, 2022, Petitioners filed their preliminary objection to PSP's preliminary objections.

## II. ALLEGATIONS IN THE AMENDED PETITION

In the Amended Petition, Petitioners allege that PSP purposely understaffs its Pennsylvania Instant Check System (PICS) Operations Section,[2] which is responsible for performing firearm purchase and transfer background checks as well as checks for individuals seeking or renewing a Pennsylvania license to carry a firearm. (Amended Petition (Am. Pet.), ¶ 1.) Petitioners allege that these staffing deficiencies have caused significant delays in PSP's processing of background checks, a large proportion of which now are taking several hours or more. *Id.*, ¶ 44. Petitioners contend that this understaffing violates Section 6111.1(b) and (c) of the Firearms Act. *See* 18 Pa.C.S. § 6111.1(b), (c).

---

[2] Although the division of PSP responsible for conducting the background checks has been referred to by various titles throughout this litigation, for purposes of this opinion, we utilize the title "PICS Operations Section," which was used by PSP at the preliminary injunction hearing.

3

Petitioners also allege that these wait times cause some prospective purchasers of firearms to cancel their purchases, thus depriving firearms sellers of income from cancelled sales. In addition, Petitioners state that PSP charges a $2.00 fee for each background check and a $3.00 fee for the sale of each firearm. Petitioners allege that they have incurred substantial un-reimbursable costs in paying PSP for background checks when the customer cancels the pending transaction due to a significant delay. *Id.*, ¶ 4. The Amended Petition sets forth in detail facts specific to the individual Petitioners that sell firearms regarding how they have been impacted by the alleged understaffing of the PICS Operations Section. *Id.*, ¶¶ 17-41. Based on these allegations, the Amended Petition seeks the following relief:

> a. Declare that [PSP's] Practice is unlawful and in contravention of 18 Pa.C.S. §§ 6111, 6111.1(b)(1), (c), as well as, [a]rticle I, [s]ections 1 [and] 21 of the Pennsylvania Constitution [Pa. Const. art. I, §§ 1, 21], and the Second Amendment to the U.S. Constitution [U.S. Const. amend. II];
>
> b. Issue an injunction enjoining the enforcement of [PSP's] Practice and requiring [PSP] and its officers, agents, servants, employees, and all persons in active concern or participation with them to immediately comply with 18 Pa.C.S. §§ 6111, 6111.1(b)(1), (c), as well as, [a]rticle I, [s]ections 1 [*and*] 21 of the Pennsylvania Constitution, and the Second Amendment to the U.S. Constitution, by immediately either repurposing existing employees or hiring and training as many new employees for the [PICS Operations Section] as are necessary to ensure that all background checks are performed "instantaneously" and responses to them are "immediate[];"
>
> c. Issue an injunction precluding [PSP] from requesting the $2.00 fee for any background checks, where the customer cancels the purchase/transfer of the firearm due to the delays of the PICS system and consistent therewith,

4

order it to assume that any Federal Firearms Licensee that utilizes PICS and does not remit the $2.00 background check fee is the result of the customer cancelling the purchase/transfer of the firearm due to the delays of the PICS system and preclude it from requiring the Federal Firearms Licensee to verify such in any manner; and[]

d. Any other relief this Court may see fit.

(Am. Pet., pp. 22-23).

## III. PSP'S PRELIMINARY OBJECTIONS AND PETITIONERS' PRELIMINARY OBJECTION THERETO

PSP lodges five preliminary objections to the Amended Petition:

(1)     Sovereign immunity precludes all of Petitioners' claims;

(2)     Petitioners have not set forth a valid claim for mandamus relief (demurrer);

(3)     The doctrine of separation of powers precludes all of Petitioners' claims;

(4)     Petitioners do not have standing to challenge the imposition of the $2.00 background check fee; and

(5)     Petitioners have not set forth a valid claim under the Second Amendment (demurrer).

Before addressing the substance of PSP's preliminary objections, we address Petitioners' "partial" preliminary objection in which they argue that the defenses of sovereign immunity and separation of powers cannot be raised by preliminary objection. Petitioners argue that these defenses must be raised as new matter under Pennsylvania Rule of Civil Procedure, Pa.R.Civ.P. 1030(a) ("Except as provided by subdivision (b), all affirmative defenses including . . . immunity from

5

suit . . . shall be pleaded in a responsive pleading under the heading "New Matter[.]").

Regarding the defense of separation of powers, Rule 1030 on its face does not bar raising the defense via preliminary objection, and this Court previously has considered preliminary objections to mandamus actions that raise the separation of powers defense. *See, e.g.*, *Finn v. Rendell*, 990 A.2d 100, 106 (Pa. Cmwlth. 2010). Regarding sovereign immunity, although Rule 1030 indicates that immunity ordinarily must be raised in New Matter, "a party may raise the affirmative defense of immunity as a preliminary objection where it is clearly applicable on the face of the complaint; that is, that a cause of action is made against a governmental body and it is apparent on the face of the pleading that the cause of action does not fall within any of the exceptions to governmental immunity." *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022 (Pa. Cmwlth. 2014) (citation omitted). Because PSP argues that Petitioners' injunctive and declaratory claims are barred on their face by sovereign immunity, we can and will address the merits of that defense here. Petitioners' preliminary objection in this regard is overruled.[3]

**Sovereign Immunity**

PSP argues that Petitioners impermissibly seek to compel PSP to take affirmative action, citing *Philadelphia Life Insurance Company v. Commonwealth*, 190 A.2d 111 (Pa. 1963). The Pennsylvania Supreme Court stated therein as follows:

> The distinction is clear between suits against the Commonwealth which are within the rule of its immunity and suits to restrain officers of the Commonwealth from enforcing the provisions of a statute claimed to be

---

[3] We ultimately do not reach the separation of powers issue.

> unconstitutional. Suits which seek to compel ***affirmative action*** *on the part of state officials or to obtain money damages or to recover property from the Commonwealth* are within the rule of immunity; suits which simply seek *to **restrain state officials*** from performing affirmative acts are not within the rule of immunity.

*Id.* at 114 (emphasis in bold added). Regardless of how the request for relief is phrased, it is the substance of the relief requested that determines whether the injunction is mandatory or prohibitory. *Stackhouse v. Pa. State Police*, 892 A.2d 54, 61 (Pa. Cmwlth. 2006). The nature of mandatory injunctions is to "command[] the performance of an affirmative act[.]" *Big Bass Lake Cmty. Ass'n v. Warren*, 950 A.2d 1137 (Pa. Cmwlth. 2008).

PSP here contends that Petitioners' claims for declaratory and injunctive relief are barred by sovereign immunity because they seek to compel PSP to perform affirmative acts, namely, hiring new employees, moving employees from other sections in PSP to the PICS Operations Section, and waiving or refunding the $2.00 background check fee imposed by subsection 6111(b)(3) of the Firearms Act. Petitioners argue that sovereign immunity does not apply because they are seeking declaratory and injunctive relief in the nature of a request for mandamus seeking to compel PSP's performance of a mandatory or ministerial statutory duty. No matter how it is worded, the injunctive relief requested seeks to compel PSP to take affirmative, concrete, and corrective action in the form of hiring or reassigning employees and waiving the $2.00 background check fee. Thus, consistent with the Supreme Court's ruling in *Philadelphia Life Insurance Company*, to the extent that Petitioners' Amended Petition seeks permanent, affirmative injunctive relief apart from mandamus, such relief is barred by sovereign immunity.

7

However, declaratory judgment actions in themselves are not barred by sovereign immunity. *See Legal Cap., LLC v. Med. Pro. Liab. Catastrophe Loss Fund*, 750 A.2d 299, 303 (Pa. 2000) (sovereign immunity did not bar action where goal of action was to restrain the Fund from performing the affirmative act of paying assigned plaintiffs or counsel and not an action to compel any affirmative action on the part of the Fund). To the extent that Petitioners seek declarations regarding PSP's duties, and their right to certain benefits, under the Firearms Act, their claim is not barred by sovereign immunity. *See id.* We accordingly will sustain PSP's first preliminary objection in part and dismiss any claims in the Amended Petition requesting injunctive relief that would compel PSP to take affirmative action. We overrule the remainder of the objection.

**Demurrer to Claim for Mandamus Relief**

Although sovereign immunity will bar a claim for injunctive relief seeking to compel a state officer or agency to take affirmative action, sovereign immunity will not bar a writ of mandamus compelling state parties to perform certain mandatory or ministerial duties. *Finn*, 990 A.2d at 105. Nonetheless, PSP argues that even if Petitioners' requests for relief are construed as requests for mandamus relief, Petitioners fail to satisfy the necessary prerequisites to maintain a mandamus action. In considering preliminary objections in the nature of a demurrer, we apply the following standard:

> In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that

8

the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.

A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the [petition for review] and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the [petition for review].

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citations omitted). This Court has described mandamus relief as follows:

A writ of mandamus is an extraordinary remedy, [ ] used to compel performance of a ministerial act or a mandatory duty. Mandamus may only be granted where the moving party establishes a clear legal right, the [respondent's] corresponding duty and the lack of any other appropriate and adequate remedy.

*DeGeorge v. Young*, 892 A.2d 48, 51 (Pa. Cmwlth. 2006) (citation omitted). Mandamus differs from declaratory relief in that mandamus "is not available to establish legal rights but only to enforce rights that have been established." *Sinkiewicz v. Susquehanna Cnty. Bd. of Comm'rs*, 131 A.3d 541, 546 (Pa. Cmwlth. 2015). "An act is ministerial if it is one which a public officer is required to perform upon a given state of facts and in a prescribed manner in obedience to the mandate of legal authority." *Filippi v. Kwitowski*, 880 A.2d 711, 713 (Pa. Cmwlth. 2005) (internal quotation and citation omitted). "The burden of proof falls upon the party seeking this extraordinary remedy to establish his legal right to such relief." *Werner v. Zazyczny*, 681 A.2d 1331, 1335 (Pa. 1996). Further:

[M]andamus lies to compel the performance of a purely ministerial duty. For example, if a statute requires an

9

official to grant a license to an applicant upon payment of a specified fee and the official refuses to do so, mandamus is the proper remedy to compel action. Moreover, it is true in this state that mandamus will lie to compel performance by a public official of a legal duty even if the existence and/or scope of the duty must be found and defined in the mandamus action itself. On the other hand, mandamus will not lie to compel performance of a discretionary act or to govern the manner of performing a required act.

*Volunteer Firemen's Relief Ass'n of the City of Reading v. Minehart*, 203 A.2d 476 (Pa. 1964) (citations omitted).

Section 6111 of the Firearms Act dictates what licensed sellers or dealers of firearms must do prior to delivering a firearm to a buyer or transferee. It does not impose duties on PSP. Relevant here, that section imposes on sellers the duties to (1) request a background check through PSP's "Instantaneous Criminal History Records Check System," *see* 18 Pa.C.S. § 6111(a)(2), (b)(3); and (2) collect from buyers and transmit to PSP within 14 days an associated $2.00 fee.[4]

Section 6111.1, on the other hand, imposes duties on PSP. Section 6111.1(b) provides that, when PSP receives a request for a background check (pursuant to Section 6111(b)(3)), it "shall *immediately* during the licensee's call or by return call *forthwith*" (1) review PSP's criminal history, fingerprint, juvenile delinquency, and mental health records to determine if the potential purchaser or transferee is prohibited from receiving or possessing a firearm; and (2) inform the licensee of whether the sale or transfer is prohibited or approved. 18 Pa.C.S. §

---

[4] The Firearms Act and PSP regulations suggest that the $2.00 fee is to be collected from the buyer/transferee by the licensee and later forwarded to PSP. *See* 18 Pa.C.S. § 6111(b)(3) ("The requester shall be charged a fee equivalent to the cost of providing the service but not to exceed $2 per buyer or transferee."), and 6111(b)(1.2) ("Fees collected under paragraph (3) . . . shall be transmitted to [PSP] within 14 days of collection."); 37 Pa. Code § 33.111(h)(2) ("When the instantaneous records check is operational, a fee shall be collected by the licensee/sheriff from the requester at the time a check is requested, under section 6111(b)(3) of the act.").

6111.1(b)(1) (emphasis provided). In the event of delay caused by "electronic failure, scheduled computer downtime or similar event beyond the control of the [PSP]," PSP must notify the seller requesting the background check of the reason for and estimated length of the delay. 18 Pa.C.S. § 6111.1(b)(2). Subsection 6111.1(c) requires PSP to "establish a telephone number which shall be operational seven days a week between the hours of 8 a.m. and 10 p.m. local time for purposes of responding to inquiries as described in this section" and further requires PSP to "employ and train such personnel as are necessary to *administer expeditiously* the provisions of this section." 18 Pa.C.S. § 6111.1(c) (emphasis provided).

Although the General Assembly did not define either "immediate" or "expeditiously" as those terms are applied to Section 6111.1 of the Firearms Act, the rules of statutory construction provide that "words and phrases shall be construed according to the rules of grammar and according to their common and approved usage." Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a). The term "immediate" is commonly defined, in part, as "occurring without delay." *See Immediate* Black's Law Dictionary (11th ed. 2019). "Expeditiously" is the adverb form of "expeditious," which commonly is defined as "marked by or acting with prompt efficiency." "Expeditious," Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/expeditious (last accessed Mar. 3, 2023). It is thus clear that the General Assembly intended that background checks and their results be communicated to requesters as efficiently and promptly as reasonably possible.

Even assuming, as we must for purposes of considering preliminary objections, the factual allegation pled by Petitioners that they have experienced delays lasting from several hours to days or weeks in some instances in the

11

processing of at least some of the background checks they have requested from PSP,[5] their claim for mandamus relief is not viable as a matter of law for two reasons. First, in order to establish a mandatory or ministerial duty, a statute must be so explicit that there can be no room for argument as to the precise action required. Here, given that many factors can affect the amount of time it may take to obtain the information necessary to determine whether the proposed buyer is eligible to purchase a gun, and further given that PSP has a corresponding duty to protect public safety by obtaining and providing accurate background information to prevent weapons from falling into ineligible hands, it cannot be said that the response time duty is so clear and precise as to be susceptible to mandamus relief.

Second, the mandamus *relief* requested relates to operational matters, which are discretionary or not mandated in the statute at all. Petitioners request that we (1) order PSP to comply with Sections 6111 and 6111.1 by hiring or transferring from other PSP sections a sufficient number of new PICS operators to ensure that background checks are instantaneous and results are immediate; and (2) enjoin PSP from requesting or collecting the $2.00 fee for any background checks after which the purchaser or transferee cancels the transaction because of delays in the PICS system. Petitioners request this relief in both the Amended Petition and Application

---

[5] We incorporate herein the findings made in the September 2, 2022 single-judge Memorandum Opinion disposing of Petitioners' Application for Preliminary Injunction. *See Evanchick I*, slip op. at 11. Those findings confirm what Petitioners fundamentally have alleged in their Amended Petition and Application for Summary Relief. Although approximately 65% of the online background checks performed through PSP's automated system run automatic checks *and* provide near-immediate results, approximately 35%, because of background information returned by the automated system, require further investigation. Those requests are transferred to a PICS operator and, if no operator is immediately available, are placed into a queue. Wait times in the queue and after can extend multiple hours or even into a second day and beyond. These are the delays that Petitioners challenge in this action.

12

for Summary Relief in terms of mandamus. *See* Am. Pet. ¶ 7; Appl. for Summ. Relief at pp. 33-34.

Petitioners allege in their Amended Petition that PSP has understaffed the PICS Operations Section causing significant delays and lost firearm sales. They request that we order PSP to employ a sufficient number of PICS operators to ensure that background checks are conducted in accordance with Sections 6111 and 6111.1. Section 6111(b)(c) requires that PSP employ and train such personnel as are necessary to perform its duties "expeditiously." The statute does not specify how many employees are "necessary" or how the PICS Operations Section should be structured. Rather, it leaves those decisions to PSP's discretion.

Further, staffing and training decisions by PSP necessarily involve questions of budgeting and legislative appropriations, both of which we conclude are beyond the reach of this Court's ability to grant mandamus relief. Even to the extent that the delays in conducting background checks and returning results are caused by staffing shortages in the PICS Operations Section, we nevertheless cannot issue a writ of mandamus dictating how PSP must staff, organize, or fund that unit when the Firearms Act leaves those matters to PSP's discretion. And, even if PSP has exercised its discretion incorrectly, mandamus will not lie to force particular corrective action.[6] *Sinkiewicz*, 131 A.3d at 546. In this respect, we sustain PSP's demurrer to the request for a writ of mandamus.

---

[6] This includes Petitioners' request that we order PSP to refund, waive, or not collect the $2.00 background check fee in the event that a potential purchaser or transferee cancels the transaction because of delays in processing a background check request. The fee is mandatory in every instance, and the Firearms Act provides no mechanism for refunding it due to delays, canceled sales, or for any other reason. Petitioners ask the Court to fashion a remedy that the General Assembly did not see fit to create. Thus, mandamus relief in this form is not available. *See Keystone Rx LLC v. Bureau of Workers' Comp. Fee Rev. Hearing Off. (Compservices Inc./AmeriHealth Cas. Servs.)*, 265 A.3d 322 (Pa. 2021) (courts are precluded from engrafting

**Declaratory Relief**

The reasons cited above precluding injunctive and mandamus relief also prevent the sort of declaratory *relief* sought by Petitioners. We simply cannot declare that the statute requires particular staffing or funding without adding words or mandates that the General Assembly did not include. Similarly, we cannot specify that responses must be given within a fixed amount of time, or that fees be refunded for cancelled transactions. That would not only add mandates lacking in the statute but could run afoul of PSP's duty to obtain accurate background information before approving the purchase of a gun. As we noted in *Stackhouse*:

> While the language in a number of cases seems to suggest that immunity is never a defense, it would seem self-evident that where a request for a declaration of rights can have no effect nor serve any purpose other than as the legal predicate for a damage or other immunity-barred claim in the same action, the demand for declaratory relief ought to fall along with the claim it serves to support. The purpose of absolute sovereign immunity—to insulate state agencies and employees not only from judgments but also from being required to expend the time and funds necessary to defend suits—would be frustrated if the declaratory action were allowed to go forward under those circumstances.

*Stackhouse*, 892 A.2d at 62. Therefore, we sustain PSP's demurrer to the claim for declaratory relief.

**Demurrer to Count II**

Finally, PSP demurs to Petitioners' claim in Count II that PSP's actions violate their right to due process under article I, section 21 of the Pennsylvania

---

remedies in the workers' compensation arena in the absence of statutory support; remedies are limited to those created by the General Assembly).

14

Constitution.[7]  Even if we were to assume one has a property right in merchandise he is only *seeking* to purchase, Petitioners do not allege that any eligible person has been denied approval of his application to purchase a firearm, only that the process takes, in some instances, longer than Petitioners desire.  As this does not even rise to an allegation of a deprivation of a property or a liberty interest, we need not address this claim further.  Similarly, the claim that due process requires that the modest $2.00 fee PSP charges must be refunded if the purchaser aborts his application after PSP has already spent time checking his background but has not concluded its search, is manifestly devoid of merit.  We sustain PSP's demurrer to Count II.

Accordingly, the above-captioned case is dismissed.


_____
**BONNIE BRIGANCE LEADBETTER,**
**President Judge Emerita**


Judge McCullough and Judge Wallace did not participate in the decision for this case.

---

[7] Article I, section 21 of the Pennsylvania Constitution provides:  "The right of the citizens to bear arms in defense of themselves and the State shall not be questioned."  Pa. Const. art. I, § 21.  Although PSP erroneously characterizes its demurrer as challenging a claim under the Second Amendment to the U.S. Constitution, it is clear both that it is demurring to Count II and that Count II does not set out a claim of any constitutional violation.

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Firearms Owners Against Crime -  :
Institute for Legal, Legislative and  :
Educational Action, Landmark  :
Firearms LLC, and James Stoker,  :
                Petitioners  :
                  :
           v.  :  No. 218 M.D. 2022
                  :
Colonel Robert Evanchick,  :
Commissioner Pennsylvania  :
State Police,  :
              Respondent  :

# **O R D E R**

AND NOW, this 6th day of March, 2023, the above-captioned case is hereby DISMISSED.

_____
**BONNIE BRIGANCE LEADBETTER,**
**President Judge Emerita**