# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bernard Sinkiewicz and : 
Toni Sinkiewicz, : 
        Appellants : 
         : 
        v. :   No. 375 C.D. 2015
         :   Argued: December 10, 2015
Susquehanna County Board of : 
Commissioners : 


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
             HONORABLE MARY HANNAH LEAVITT, Judge
             HONORABLE P. KEVIN BROBSON, Judge

OPINION
BY JUDGE LEAVITT                     FILED: December 30, 2015


        Bernard and Toni Sinkiewicz (Homeowners) appeal an order of the Court of Common Pleas of Susquehanna County (trial court) denying their request for a writ of mandamus to be issued to the Susquehanna County Board of Commissioners (County). Homeowners sought the writ to compel the County to enforce the requirements of the Susquehanna County Subdivision and Land Development Ordinance (SALDO)[1] and the Pennsylvania Municipalities Planning Code (MPC)[2] against High Cadence LLC (High Cadence). Homeowners complained to the County that High Cadence had subdivided its property without the County's approval. However, the County disagreed with Homeowners' legal conclusion and, thus, declined to take action against High Cadence. The trial court

---

[1] SUSQUEHANNA COUNTY SUBDIVISION AND LAND DEVELOPMENT ORDINANCE, effective January 26, 2011, Ordinance # 2005-01, *as amended*.

[2] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101 - 11202.

held that by granting others permission to use its land, High Cadence did not effect subdivisions that triggered the requirements of the SALDO or the MPC. Thus, Homeowners were not entitled to a writ of mandamus.

## Background

Homeowners own real property located in Gibson Township, Susquehanna County, adjacent to the property owned by High Cadence. High Cadence's property consists of two lots. Lot No. 5 is approximately 29 acres and includes a single family residence.[3] Lot No. 10 is approximately 13 acres and includes a commercial building that originally housed a sawmill.

Over the past several years, portions of Lot No. 5 and Lot No. 10 have been used, with High Cadence's permission, by a variety of business enterprises. Currently, Scott and Longacre Trucking, LLC uses most of Lot No. 10 to operate a trucking and truck repair business, known as "Route 92 Truck Repair." In turn, Scott and Longacre has rented out parts of Lot No. 10 it does not need. For instance, for approximately one year, Scott and Longacre rented four acres of Lot No. 10 to Cody Energy Services, Inc., which conducted pipeline fabricating activities on the lot. At another time, Scott and Longacre rented some of the front acreage of Lot No. 10 to Letourneau Corporation for equipment storage. Currently, Scott and Longacre rents ten acres of Lot No. 10 to another pipeline fabrication company known as "Michael's Pipeline." High Cadence has also rented Lot No. 10 to persons other than Scott and Longacre. It rented three acres of Lot No. 10 to Somerset Water Resources for its fracking water supply operation.

---

[3] Donald Twining is the caretaker for High Cadence; he resides in the house with his family.

High Cadence often rents a portion of Lot No. 5 to natural gas industry service companies for equipment storage. At one point, it rented approximately three acres of Lot No. 5 for several months to a company called "Rain for Rent" for the storage of water tankers. At present, one acre of Lot No. 5 is being used by Bruce Woodmansee & Sons, a pipeline land clearing company, for equipment storage.

Though all of the leases between High Cadence and its lessees have been oral, Scott and Longacre used a written agreement to sub-lease part of its leased property to Cody Energy Services, Inc. The written agreement established a rental period of one year, with an option to renew, for payment of $1,750 per month. It states that "Cody Energy Services, Inc." has the right to use "the 4 (four) acre premises located at: 232 State Route 2036 Thompson PA 18465." Reproduced Record at 452a (R.R.____). Both of High Cadence's lots, which total 42 acres, use this address. No boundaries or further description of the sub-leased four acres are set forth in the lease.

Homeowners complained to the Susquehanna County Planning Commission that High Cadence had not obtained the Commission's approval to subdivide Lot Nos. 5 and 10 in connection with the various above-listed tenancies. By letter dated July 1, 2013, the Planning Commission informed Homeowners that no action would be taken because it did not agree that any "subdivision" had occurred. The letter set forth three reasons regarding why no enforcement action could be taken against High Cadence:

> 1. It is the Planning Commission's understanding that an approved industrial development existed on the subject property

prior to the purchase of the neighboring property by [Homeowners].

2. The Susquehanna County Planning Commission has not, for as long as any member can remember, required a subdivision or land development plan for a lease of a portion of property.

3. There is no mechanism known to the Planning Commission to discover if and when a lease of a portion of property has taken place.

R.R. 435a.

In response, Homeowners instituted the instant mandamus action to compel the County to require High Cadence to file a subdivision plan for Lot Nos. 5 and 10, which had been subdivided by reason of the above-described rental agreements, or "leases."[4] A hearing was held on December 15, 2014. At the hearing, Donald Twining, High Cadence's caretaker for Lot Nos. 5 and 10, Robert Templeton, the Director of Planning for Susquehanna County, and Adam Longacre, the owner of Scott and Longacre, testified.

Twining testified that he formerly owned the property from 1998 to 2012. R.R. 203a. At the time of his purchase, the property consisted of one lot, which he later subdivided into Lot No. 5 and Lot No. 10. R.R. 205a. In 2012, the property was sold at a public auction to High Cadence, a company owned by Twining's brother. R.R. 203a. Twining explained that the various rental agreements did not specify dimensions; rather, the agreements allowed the renters

---

[4] The County filed preliminary objections in the nature of a demurrer, asserting that Homeowners' mandamus action was improper because it sought to compel the County's exercise of discretion. The trial court overruled the preliminary objections in an order dated February 6, 2014.

4

to "use what they need[ ]." R.R. 211a, 213a. The agreements were oral, not written. R.R. 216a.

Templeton testified on behalf of the County. He explained that the County declined the Homeowners' request to bring enforcement actions against High Cadence because the County concluded that the casual rental agreements had *not* effected subdivisions. Templeton explained:

> So the definition of lot is: "A designated parcel, tract, or area of land regardless of size, established by a plat." A plat is a surveyor's description by [metes] and bounds of a property. So, I contend that leasing a portion, you know, 2 or 3 acres over here with a wave of a hand or the portion behind the building is not a lot, is not a plat, it's not a platted lot.

R.R. 235a. Templeton then discussed leasing situations that could effect a subdivision within the meaning of the SALDO and the MPC:

> Over the years, we've had a number of cell towers developed throughout the county. The cell tower companies lease – generally 100 by 100 foot piece of land with courses and distances. That was submitted to the Planning Commission, along with the development. The Planning Commission considers that a land development, but there's also a specifically designated leased parcel which is submitted to the Planning Commission for approval, along with the development of the tower.

R.R. 243a. Templeton explained that Homeowners' real objection was with the commercial and industrial uses of the land owned by High Cadence. He stated as follows:

> I see this more as a zoning issue, is an issue that would be addressed if there was a zoning ordinance. The use of the land,

5

various uses on a single piece of land, that has in my knowledge of planning always been a zoning issue rather than subdivision, dividing up land into specific lots, or land development building a commercial or industrial development. *Gibson Township does not have zoning*[.]

R.R. 238a (emphasis added). Templeton opined that Homeowners sought to prevent land uses they found offensive by invoking the County's SALDO when what was needed was the enactment of land use regulation, *i.e.*, zoning.

By order filed February 26, 2015, the trial court denied Homeowners' complaint on the merits. In its accompanying one and a half page opinion, the trial court explained:

> We are not aware of any new buildings, streets, sewers or sewer systems to have been constructed by any tenants or subtenants of any of the areas of the subject lots. Our understanding of the matter was that the existing building or buildings were used and no new ones constructed. Further, many of the lessors were only using barren lands/acreage upon which to conduct their business. This being the case then there is not a right or jurisdiction under either the MPC or SALDO.

Trial Court op. of 2/26/15, at 2 (citation omitted).[5] Homeowners then appealed to this Court.

---

[5] The entirety of the trial court's opinion is as follows:

> Plaintiffs, Bernard Sinkiewicz and Toni Sinkiewicz, by and through their legal counsel, filed a Complaint in Mandamus on October 4, 2013, against Defendant Susquehanna County Board of Commissioners (Board).

> Plaintiffs, owners of a 30.55 acre rural residential property in Gibson Township, Susquehanna County, seek the court to compel the Board to enforce compliance by an entity, High Cadence, an adjacent landowner, with the Susquehanna County Subdivision and Land Development Ordinance and require High Cadence to obtain necessary land development and/or subdivision approvals.

**(Footnote continued on the next page . . .)**

6

## Appeal Issues

On appeal,[6] Homeowners raise two issues. First, they argue that the trial court erred in holding that High Cadence did not effect a subdivision that required the County's review and approval. Second, they argue that the trial court correctly held that a mandamus action was appropriate where, as here, the plaintiffs sought to compel the County to enforce the SALDO. The County rejoins

**(continued . . .)**

> Additionally, Plaintiffs Sinkiewicz seek the court to direct the Board to take such actions as are necessary to cease ongoing violations of the Susquehanna Subdivision and Land Development Ordinance until all proper approvals thereunder have been obtained by High Cadence.

> The Board by its legal counsel on October 24, 2013 filed a Preliminary Objection to Plaintiffs' Complaint in Mandamus citing legal insufficiency of a pleading (Demurrer).

> The Court, after argument and briefing, filed an opinion and order on February 6, 2014, overruling the preliminary objections and ordering the Defendant Board to file an answer to Plaintiff's Complaint in Mandamus. In the opinion we determined that (sic) the remedies and/or enforcement provisions of both the SALDO and MPC (Municipal Planning Code) to be discretionary.

> In the instant matter we must concern ourselves with the question of whether or not under the circumstances presented as to the lands in question improvements are sought to be made upon the lots in question. We are not aware of any new buildings, streets, sewers or sewer systems to have been constructed by any tenants or subtenants of any of the areas of the subject lots. Our understanding of the matter was that the existing building or buildings were used and no new ones constructed. Further, many of the lessors were only using barren lands/acreage upon which to conduct their business. This being the case then there is not a right or jurisdiction under either the MPC or SALDO. *In Re Heritage Bldg. Group, Inc.*, 977 A.2d 606 (Pa. Cmwlth. 2009).

Trial Court op. of 2/26/15.

[6] This Court's review of a trial court's denial of a writ of mandamus determines whether the trial court committed an error of law or abused its discretion, and whether substantial evidence exists to support its findings. *Township of Forks v. Forks Township Municipal Sewer Authority*, 759 A.2d 47, 51 n.2 (Pa. Cmwlth. 2000). Our scope of review on factual findings is deferential. *Reading Area Water Authority v. Schuylkill River Greenway Association*, 100 A.3d 572, 577 (Pa. 2014). Our standard of review of legal questions is *de novo*. *Podolak v. Tobyhanna Township Board of Supervisors*, 37 A.3d 1283, 1287 (Pa. Cmwlth. 2012).

that the casual "leases" authorized by High Cadence did not have a fixed duration or convey a discrete portion of a property. Neither Lot No. 5 nor No. 10 has been subdivided. The County also argues that the trial court erred in overruling its preliminary objections because mandamus is not available where, as here, Homeowners sought to compel the County to exercise discretion in a particular way.

### Mandamus Principles

The common law writ of mandamus lies to compel an official's performance of a ministerial act or a mandatory duty. *McGill v. Pennsylvania Department of Health, Office of Drug and Alcohol Programs*, 758 A.2d 268, 270 (Pa. Cmwlth. 2000). "The burden of proof falls upon the party seeking this extraordinary remedy to establish his legal right to such relief." *Werner v. Zazyczny,* 681 A.2d 1331, 1335 (Pa. 1996). Mandamus requires "[1] a clear legal right in the plaintiff, [2] a corresponding duty in the defendant, and [3] a lack of any other adequate and appropriate remedy at law." *Crozer Chester Medical Center v. Department of Labor and Industry, Bureau of Workers' Compensation, Health Care Services Review Division*, 22 A.3d 189, 193 (Pa. 2011) (citations omitted). Mandamus is not available to establish legal rights but only to enforce rights that have been established. *Wilson v. Pennsylvania Board of Probation and Parole,* 942 A.2d 270, 272 (Pa. Cmwlth. 2008). As a high prerogative writ, mandamus is rarely issued and never to interfere with a public official's exercise of discretion. *Chadwick v. Dauphin County Office of the Coroner,* 905 A.2d 600, 603 (Pa. Cmwlth. 2006).

8

A writ of mandamus can be used to compel a public official to exercise discretion where the official has a mandatory duty to perform a discretionary act and has refused to exercise discretion. In establishing this use of mandamus, our Supreme Court explained as follows:

> But *where by a mistaken view of the law* or by an arbitrary exercise of authority *there has been in fact no actual exercise of discretion, the writ will lie*.

*Tanenbaum v. D'Ascenzo*, 51 A.2d 757, 758 (Pa. 1947) (citations omitted) (emphasis added). When the official refuses to exercise discretion, a writ of mandamus "will lie" to compel the official to do so. *Id*. Notably, where a public official "is clothed with discretionary powers, and has exercised those powers, mandamus will not lie to compel a revision of the decision resulting from such exercise of discretion, *though in fact, the decision may be wrong*." *Anderson v. Philadelphia*, 36 A.2d 442, 444 (Pa. 1944) (emphasis added).

**Applicable Law on Subdivision and Land Development**

We begin with a review of the law on subdivision and land development. This subject has been addressed in legislation enacted by the General Assembly and by the County.

The MPC states that where a municipality has enacted a subdivision and land development ordinance, its terms must be followed in order to effect a lawful development or subdivision. Section 507 of the MPC states, in relevant part, as follows:

> *Where a subdivision and land development ordinance has been enacted by a municipality under the authority of this article no subdivision or land development of any lot, tract or parcel of land shall be made*, no street, sanitary sewer, storm sewer,

9

water main or other improvements in connection therewith shall be laid out, constructed, opened or dedicated for public use or travel, or for the common use of occupants of buildings abutting thereon, *except in accordance with the provisions of such ordinance*.

53 P.S. §10507 (emphasis added).

The County has adopted such an ordinance, and several of its provisions are relevant here. First, subdivision plans must be filed with the Susquehanna County Planning Commission:

> *All plans for the subdivision* and/or development *of land within the corporate limits of the municipalities governed by this Ordinance shall be submitted to and reviewed by the Susquehanna County Planning Commission* and other Municipal, State and/or County Officials as provided in this Ordinance, *and shall be approved or disapproved by the Planning Commission* in accordance with the procedures specified in this Article.

SALDO, §301 (emphasis added); R.R. 304a. The SALDO further provides that the "[a]pplications for subdivision and/or land development plans shall be submitted in the manner and form prescribed by the Planning Commission" and "shall contain and be supplemented with such information as may be required by the Planning Commission and/or the Planning Department." SALDO, §400; R.R. 319a. The SALDO defines "subdivision" as:

> *The division* or redivision *of a lot*, tract, or parcel of land *by any means into two (2) or more lots, tracts, parcels or other divisions of land including changes in existing lot lines for the purpose, whether immediate or future, of lease*, partition by the court for distribution to heirs or devisees, transfer of ownership or building or lot development[.]

SALDO, §204 (emphasis added); R.R. 302a.[7]  Finally, the SALDO provides that

> In addition to other remedies, *the County may institute and maintain appropriate actions* by law or in equity *to restrain, correct or abate violations* to prevent unlawful construction, to recover damages and to prevent illegal occupancy of a building, structure or premises.

SALDO, §1104.1.A; R.R. 423a (emphasis added).

### Landowners' Request for a Writ of Mandamus

The County contends that because it does not have a mandatory duty to enforce the SALDO, Homeowners lacked a clear legal right to relief.  By contrast, the County's Planning Commission does have a mandatory duty to rule upon an application for a subdivision and land development plan.  Accordingly, if the County refuses to exercise its discretion when presented with such an application, a writ of mandamus may lie to force it to rule, albeit not to direct the exercise of its discretion in a particular way.  *McGill*, 758 A.2d at 270.  However, the County's decision on whether or not to undertake an enforcement action requires the exercise of a type of discretion that cannot be compelled by a writ of mandamus.

To begin, the SALDO states that "the County *may* institute and maintain appropriate actions … to restrain, correct or abate violations" of the SALDO.  SALDO, §1104.1.A (emphasis added); R.R. 423a.  It does not require the County to seek out and initiate legal actions against wayward property owners.

---

[7] The SALDO's definition of "subdivision" mirrors the definition of "subdivision" found in Section 107 of the MPC, 53 P.S. §10107.

11

Homeowners seek to compel the County to exercise its prosecutorial discretion, which is a matter beyond judicial review regardless of the form of action.

The exercise of an agency's prosecutorial discretion is not subject to judicial review, any more than the discretion of a criminal prosecutor not to prosecute a particular case can be reviewed by courts. In an early *en banc* decision, this Court upheld the decision of the Medical Education and Licensure Board and the State Board of Nurse Examiners not to pursue a private party complaint filed against the licenses of several medical providers. We held that when an agency considers whether or not to take an enforcement action, it exercises prosecutorial discretion that is beyond judicial review. We explained:

> In exercising such discretion, neither Board action is properly subject to judicial review, for such action is not adjudicatory in nature. *See generally*, 1 Davis, Administrative Law Treatise §4.07 (1958).... [E]xecutive officers of government who are impressed with *discretionary powers of prosecution often choose not to exercise those powers upon policy considerations wholly apart from the possibility that sufficient cause might exist to support a prosecutorial action*. Incident, however, to the constitutional separation of powers between the executive and judicial branches of government, courts cannot interfere with the executive's free exercise of such discretionary determinations.

*In re: Frawley*, 364 A.2d 748, 749 (Pa. Cmwlth. 1976) (emphasis added).

The United States Supreme Court has explained the nature of the policy considerations referenced in *Frawley*. The Supreme Court held in *Heckler v. Chaney*, 470 U.S. 821, 831 (1985), that "agency decisions to refuse enforcement" are unsuitable for judicial review. The reasons are several.

12

First, an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, *but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all.* An agency generally cannot act against each technical violation of the statute it is charged with enforcing. The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.

* * *

Finally, we recognize that an agency's refusal to institute proceedings shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict - a decision which has long been regarded as the special province of the Executive Branch, inasmuch as it is the Executive who is charged by the Constitution to "take Care that the Laws be faithfully executed." U.S. Const., Art. II, §3.

*Id.* at 831-32 (emphasis added).

The SALDO does not impose a mandate upon the County to enforce the SALDO. As treatise authority observes, it is typical for legislation to provide in the strongest terms that a prosecutor must enforce a statute. Even so, the legislature presumes that there is a concomitant power not to enforce. 2 KENNETH C. DAVIS, ADMINISTRATIVE LAW TREATISE §9:1, at 216-218 (2d. ed. 1979). *A fortiori*, where, as here, the SALDO does not present the agency's power to enforce a law as a mandate,[8] a writ of mandamus does not lie.

---

[8] Likewise, we have held that homeowners may not use a writ of mandamus as a means of compelling a county to enforce zoning provisions. *Hanson v. Lower Frederick Township Board*
**(Footnote continued on the next page . . .)**

The County's exercise of discretion not to enforce the SALDO is beyond judicial review. It is not for courts to decide whether the County should pursue putative violations of its SALDO or matters it may consider more compelling such as, for example, the discharge of raw sewage into a stream that flows through a County park. The County must be able to set its priorities free from judicial interference. In any case, Homeowners did not have a clear right to relief because the County's reasons for not instituting an enforcement action against High Cadence were legally sound, as set forth below.

## Subdivision for a Lease

Homeowners argue that because the County's SALDO regulates "divisions of land … [done] for the purpose … of lease," High Cadence has subdivided its property. SALDO, §204 (Specific Terms); R.R. 302a. Homeowners argue that before leasing various portions of the property, High Cadence was required to apply for and obtain approval of a subdivision plan. SALDO, §301 (General); R.R. 304a.[9] Homeowners rely on *White v. Township of Upper St. Clair*, 799 A.2d 188 (Pa. Cmwlth. 2002) to support this position.[10]

---

**(continued . . .)**
*of Supervisors*, 667 A.2d 1221, 1223 (Pa. Cmwlth. 1995). As we explained in *Hanson*, Section 617 of the MPC provides homeowners with a private right of action to redress zoning violations of neighbors. 53 P.S. §10617 ("In case any … land is … used in violation of any ordinance enacted under this act … any aggrieved owner … of real property … may institute any appropriate action … to prevent, restrain, correct or abate such building, structure, landscaping or land, or to prevent, in or about such premises, any act, conduct, business or use constituting a violation."). As the trial court observed, no mirror provision in the MPC exists for subdivision violations. Trial Court op. of 2/6/14, at 12.

[9] It states:

All plans for the subdivision and/or development of land within the corporate limits of the municipalities governed by this Ordinance shall be submitted to and reviewed by the Susquehanna County Planning Commission and other Municipal,

**(Footnote continued on the next page . . .)**

14

In *White*, a township entered into an agreement with a telecommunications company to lease .428 acres of a dedicated park for the development of a communications tower and a 20-foot wide, one quarter mile long access road to the tower. The lease was for an initial 25 year term, with a renewal option for three consecutive terms. Residents of the township brought suit against the township, *inter alia*, for failing to require the telecommunications company to comply with the township's SALDO before subdividing the land for the lease. The trial court disagreed that the lease effected a subdivision and development and dismissed the residents' action. On appeal, this Court reversed.

We explained that the township's lease "*conveys the use of a discrete parcel of land* from the [t]ownship to [the telecommunications company]" by lease. *White*, 799 A.2d at 202 (emphasis added). The township's SALDO defined a "subdivision" as any action that divides a lot "for the … immediate … purpose of lease." *Id.* Because the lease identified a discrete parcel and because the SALDO defined "subdivision" as it did, we concluded that the lease in question subdivided the land within the meaning of the township's SALDO.

The County distinguishes *White*. The lease in *White* conveyed a discrete portion of the park to the telecommunications company in a written and definitive contract for an initial period of 25 years. By contrast, the "leases" in the

**(continued . . .)**
> State and/or County Officials as provided in this Ordinance, and shall be approved or disapproved by the Planning Commission in accordance with the procedures specified in this Article.

SALDO, §301.

[10] In *White,* the issue of whether an action in mandamus was the proper vehicle for challenging the County's lease of a park to a telecommunications company was not raised. Notably, the complaint in *White* involved numerous counts, not just mandamus.

15

matter *sub judice* are vague as to location and term. Because the leases are not written, it cannot be discerned what portions of the land are to be used exclusively by High Cadence, exclusively by the lessees or used jointly. Further, the lease in *White* conveyed a parcel of .428 acres of property, *i.e.*, a "discrete parcel of land," for a period of 25 to 75 years, for development of a communications tower. *White*, 799 A.2d at 202.

The leases at issue in this case grant others permission to "use what they needed." *See* R.R. 211a. The property in question is jointly used by High Cadence, the lessees, and the sub-lessees. The agreements between High Cadence and its lessees, and sub-lessees, do not convey discrete portions of land. Further, as noted by the trial court, none of the lessees, or sub-lessees, constructed "buildings, streets, sewers or sewer systems." Trial Court op. of 2/26/15, at 2. In sum, the leases effected neither a subdivision nor a development, in contrast to *White*.

In short, because *White* concerned the conveyance of a discrete parcel of land and a land development that accompanied the lease, it is distinguishable. We affirm the trial court's construction of the SALDO.

## Conclusion

The trial court erred in allowing Homeowners to proceed in a mandamus action to compel the County to initiate actions to enforce the SALDO. In any case, High Cadence did not need to file a subdivision plan to allow others to use its land in arrangements that do not convey a discrete portion of property. Accordingly, we affirm the order of the trial court.

_____
MARY HANNAH LEAVITT, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Bernard Sinkiewicz and | : | |
| Toni Sinkiewicz, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 375 C.D. 2015 |
| | : | |
| Susquehanna County Board of | : | |
| Commissioners | : | |

# **O R D E R**

AND NOW, this 30th day of December, 2015, the order of the Court of Common Pleas of Susquehanna County filed February 25, 2015, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, Judge