# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jill Mancini, :
                         Appellant :
                              :
           v. : No. 1292 C.D. 2022
                              : Submitted: May 7, 2024
County of Northampton Personnel :
Appeals Board :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
                    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER                   **FILED: June 7, 2024**

Jill Mancini, representing herself, appeals from an Order[1] of the Court of Common Pleas of Northampton County (common pleas) denying her petition for review (Petition) of a final determination (Determination) of the Office of Open Records (OOR), which denied her appeal from Northampton County's (County) denial of requests for communications pursuant to Pennsylvania's Right-to-Know Law[2] (RTKL). Mancini sought records of communications between counsel for the County, counsel for the County's Personnel Appeals Board (PAB), County officials, and the PAB related to an underlying complaint in mandamus she filed against the PAB. Mancini argues that the requested communications are not, as common pleas'

---

[1] Common pleas' Order was entered on October 17, 2022, along with a Statement of Reasons. For succinctness, we will refer to the Order and Statement of Reasons collectively as the Order.

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

held, protected by the attorney-client privilege or the attorney-work product doctrine. After review, we affirm.

## I.    BACKGROUND

### A.    *Underlying Litigation*

This matter is another in a complicated history of litigation in multiple courts between Mancini and the County. Mancini was hired in 2007 as a full-time career service assistant solicitor for the County. (Reproduced Record (R.R.) at 303a.)[3] In 2014, she became aware that the newly elected County Executive was going to terminate her position. (*Id.*) Mancini filed a grievance pursuant to the County's policies[4] because she anticipated that her position was going to be terminated. (*Id.* at 303a-04a.) Mancini's position was officially terminated, a hearing was held, and her grievance was denied. (*Id.* at 304a.) Mancini timely appealed to the PAB, and the PAB held two hearings. (*Id.*) The PAB did not render a final decision regarding Mancini's appeal or issue findings of fact or conclusions of law, which Mancini maintained that the PAB is required to do under the County's policies.[5] (*Id.*; Order at 2.)

After two years without a final decision, (R.R. at 304a), Mancini filed a complaint in mandamus in common pleas against the PAB seeking an order to compel the PAB to issue a final determination in her grievance appeal. (Order at 2.)

---

[3] For context purposes only, we glean some of the underlying facts from common pleas' prior decisions related to the previous litigations that were not specifically mentioned in the Order. The following facts are derived from common pleas' February 14, 2018 Order filed in *Mancini v. Northampton County Personnel Appeals Board*, Dkt. No. CV-2016-10211.

[4] These policies included the Northampton County Home Rule Charter, Article X, § 1005(a), (R.R. at 350a-97a), the Northampton County Career Service Regulation 15.01, (R.R. at 398a-417a), and the Northampton County Employee Policy 3.15, (R.R. at 422a).

[5] Specifically, Northampton County Career Service Regulation 15.01 and the Northampton County Employee Policy 3.15.

William Kennedy, Esq. (Mr. Kennedy), of Ballard Spahr LLP, a contract attorney for the County, and Juan Camacho, Esq., a solicitor appointed by then County Executive John Brown, represented the PAB in the mandamus action. (*Id*. at 2 n.3, 3.) Common pleas granted Mancini's complaint in mandamus and ordered the PAB to render a final adjudication in her grievance action. (R.R. at 322a.) Thereafter, the PAB unanimously denied Mancini's grievance appeal and rendered a final decision. (*Id*. at 323a-29a.)

### B. RTKL Requests and OOR Determinations

During the above litigation, Mancini filed with the County, in 2017, requests for disclosure of communications relating to the mandamus action against the PAB with the County. (R.R. at 176a-79a.) Specifically, Mancini sought "electronic voicemail, handwritten or typed notes, email or letters, text messages or records of appointments" from October 2016 to July 2017 "between former County Executive John Brown and his agents, . . . and individuals representing the PAB, including Solicitor Juan Camacho and Ballard Spahr attorneys [Mr.] Kennedy and Elizabeth McManus." (Order at 2.) The County denied these requests because the communications were protected by, relevantly, the attorney-client privilege and the attorney-work product doctrine. (*Id*. at 2; R.R. at 180a-81a.) Mancini appealed to the OOR, and the OOR issued multiple determinations following remands from common pleas. The OOR ultimately concluded that none of the requested communications were protected by the attorney-client privilege or the attorney-work product doctrine. (Order at 5-6.) The County appealed.

In 2020, Mancini filed another request for communications, which significantly overlapped the communications sought previously. Mancini requested "communications between contract attorneys for the County, attorneys for the PAB,

attorneys for the County, and members of the PAB and [the] Executive Branch of the County" from October 2016 to June 2020. (*Id*. at 6; R.R. at 205a-06a.) The County granted the request in part and denied it in part claiming most communications were protected by the attorney-client privilege or the attorney-work product doctrine. (R.R. at 206a-08a.) Mancini appealed to the OOR, and the OOR determined that the County established the attorney-client privilege protected most communications and that the attorney-work product doctrine protected many other communications. (Order at 6-7.) Mancini appealed.

### C. *Common Pleas' Order*

Common pleas consolidated the RTKL appeals as they "raise[d] identical legal issues, involve[d] the same parties, and include[d] substantial factual overlap." (Order at 7.) In its Order, common pleas analyzed Mancini's first argument "that communications between the contracted attorneys and the County cannot be privileged because these attorneys represented the PAB, not the County or the County Executive in the mandamus action" and there is an "inherent conflict of interest [that] prevents attorneys from representing both the PAB and the County and County [E]xecutive." (Order at 9.) After reviewing the legal principles related to the application of the attorney-client privilege and the attorney-work product doctrine, and the County's submitted evidence, including affidavits from Mr. Kennedy and other outside counsel and contracts between the County and Mr. Kennedy's law firms, common pleas concluded that "Mr. Kennedy and his associates[] were retained to represent the County as a whole, includ[ing] the PAB as an arm of the County." (*Id*. at 12.) Since the County and the PAB provided sufficient evidence to show an attorney-client relationship had been established, and the County and the PAB met the other requirements of establishing the attorney-

4

client privilege as established in a prior common pleas' opinion, issued September 19, 2018, common pleas concluded many of the communications were protected by the attorney-client privilege. (*Id*. at 12-13 & n.13.)

Common pleas then addressed Mancini's argument that the attorney-client privilege cannot apply here because the PAB and the County cannot be co-clients of Mr. Kennedy as the PAB "function[s] as an independent grievance hearing board that adjudicates grievances between the County and disgruntled personnel" creating a conflict of interest. (*Id*. at 13.) Mancini rested her argument on her assertion that "any decision in the mandamus action act[ed] as a de facto decision of the merits of the underlying grievance claim and to allow such a relationship denies her such a hearing." (*Id*.) Common pleas concluded that Mancini's mandamus action is "wholly separate from the merits of [her] grievance claim" and, thus, Mr. Kennedy's representation of the PAB in the mandamus action did not create a conflict of interest. (*Id*. at 13-14.)

Common pleas continued to explain that even if the attorney-client privilege did not apply, the attorney-work product doctrine would apply to preclude disclosure of many of the communications. (*Id*. at 14.) Common pleas stated that Mancini did not specifically challenge the OOR's conclusion that the attorney-work product doctrine applied to some of the communications, but "summarily" asserted that the privilege was waived due to the communications disclosure. (*Id*. at 16.) Common pleas concluded that none of the communications were disclosed to Mancini, who was the adversary in the mandamus action, and thus the privilege was not waived. (*Id*. at 15-16.)

In sum, common pleas concluded that the attorney-client privilege applied to several of the requested communications, and the work product doctrine protected

other communications, and denied Mancini's Petition.[6]  Based on these conclusions, and its *in camera* review of the communications, common pleas attached to its opinion a list of the communications it precluded, or did not preclude, from being disclosed and the reason for doing so.  (*See id*. Ex. A.)

Mancini appealed and filed her concise statement of errors pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b).  Common pleas issued an opinion on December 9, 2022, affirming and incorporating its Order pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(1), Pa.R.A.P. 1925(a)(1).

## II.    DISCUSSION

### A.    *Mancini's Arguments*[7]

Mancini argues that common pleas erred in concluding that the attorney-client privilege applies to many of the requested communications as there exists a conflict of interest where outside counsel, namely, Mr. Kennedy, represented the PAB in the mandamus action.  According to Mancini, the County[8] cannot assert the attorney-client privilege because the County was not a party to the mandamus action and could not be a client of Mr. Kennedy.  Mancini argues that common pleas assumed, "[w]ithout any analysis or authority, . . . that the County [] was a party to the

---

[6] Common pleas also concluded that some of the communications were protected as being communications between the County and its insurance carrier.  *See* Section 708(b)(27) of the RTKL, 65 P.S. § 67.708(b)(27); (Order at 17).  Mancini does not pose any issue regarding common pleas' conclusion that certain requested communications were protected as insurance-related communications.  (*See* Mancini's Brief (Br.) at 64 n.5 ("Mancini is not asking for [r]ecords protected by the [i]nsurance carrier exception.  65 P.S. § 67.708(b)(27).").)

[7] The PAB was precluded from participating in this matter because it did not file a brief. (*See* 9/11/2023 Order.)

[8] Mancini uses County and County Executive interchangeably throughout her filings.  We will refer to both as the County.

6

mandamus action because the PAB was a County agency" and the fact that the PAB is a County agency does not make it a party to the mandamus action. (Mancini's Brief (Br.) at 31.) Mancini contends the affidavits common pleas considered "are nothing more than bald assertions of [the] attorney-client privilege" and that "mere belief that one is a party to the mandamus action and that [Mr.] Kennedy represented both the [County] and the PAB most certainly do not make it so." (*Id.* at 33 (citing *Est. of Paterno v. Nat'l Collegiate Athletic Ass'n (NCAA)*, 168 A.3d 187 (Pa. Super. 2017)) (*In re Estate of Paterno*).) Mancini maintains that because the County was not Mr. Kennedy's client in the mandamus action, the attorney-client privilege is inapplicable as the privilege only extends to attorneys and their clients. (Mancini's Br. at 33-34.)

Mancini also argues that there is an inherent conflict of interest here because "[a]n attorney who represents a party before an adjudicatory body may not advise the adjudicatory body during the decisional process" and "the County [] and, at [its] command, [Mr.] Kennedy, litigated the mandamus action with the clear goal of winning a denial of mandamus, hence a victory for the County [] in the grievance." (*Id.* at 43.) Mancini cites Pennsylvania Rules of Professional Conduct 1.7, 1.8, 1.13, and 5.4, Pa.R.P.C. 1.7, 1.8, 1.13, and 5.4, which generally prohibit attorneys from representing clients where there are conflicts of interest, to support her argument that there is an inherent conflict of interest here precluding the use of the attorney-client privilege. (*Id.* at 50-54.) Mancini further argues that if the attorney-client privilege did apply here, her due process rights would be violated based on her conclusion that an inherent conflict of interest exists. (*Id.* at 49, 64.)

Regarding common pleas' conclusion that the attorney-work product doctrine applies to most communications, Mancini contends this privilege was waived "by

7

[disclosing] communications between or among parties with adverse interests." (*Id.* at 58.) According to Mancini, "[t]he mandamus action asked the PAB to judge the County['s] conduct, hence there was a conflict between [it] and the PAB." (*Id.* at 60.) Mancini contends that common pleas incorrectly determined that "Mancini [was] the only adversary in the mandamus action" because if the County became a party to the mandamus action, it "would have stood in the same shoes as Mancini, [a] litigant before the PAB" and the disclosure of communications between the PAB and the County waived the attorney-work product doctrine. (*Id.* at 61-62.)

We address Mancini's arguments in turn.[9]

### B.    *Analysis*

#### 1. Applicable RTKL Principles

Section 302 of the RTKL requires local agencies to disclose "public records in accordance with th[e RTKL.]" 65 P.S. § 67.302. Section 102 provides that a "[l]ocal agency" includes "[a] political subdivision, intermediate unit," or "[a]ny local, intergovernmental, regional or municipal agency, authority, council, board, commission or similar governmental entity[,]" 65 P.S. § 67.102. Section 102 also defines a "[r]ecord" as "[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency" and includes "document[s], paper[s], [and] letter[s.]" *Id.* A "public record," is a narrower category of record, and, relevant here, is "[a] record, including

---

[9] "Our . . . review from a decision of a trial court in a case under the RTKL is []limited to determining whether findings of fact are supported by [substantial] evidence or whether the trial court committed an error of law, or an abuse of discretion in reaching its decision.[]" *Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1213 n.6 (Pa. Cmwlth. 2011) (internal quotation marks and citation omitted).

a financial record, of a . . . local agency that . . . is not protected by a privilege." *Id.* A "[p]rivilege" may be "[t]he attorney-work product doctrine, the attorney-client privilege . . . or other privilege[s] recognized by a court interpreting the laws of this Commonwealth." *Id.* Common pleas here concluded that the attorney-client privilege and the attorney-work product doctrine were properly invoked by the County and precluded disclosure of certain of the communications that Mancini requested.

### 2. Attorney-Client Privilege

To invoke the attorney-client privilege, the asserted holder must show:

(1) **The asserted holder of the privilege is or sought to become a client**.

(2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

(3) The communication relates to a fact of which the attorney was informed by the client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

(4) The privilege has been claimed and is not waived by the client.

*Dep't of Educ. v. Bagwell*, 114 A.3d 1113, 1123-24 (Pa. Cmwlth. 2015) (emphasis added). The attorney-client privilege protects communications from the client to their attorney, and from the attorney to their client. *Id.* at 1124. The privilege allows for "candid communications between counsel and client, so that counsel may provide legal advice based upon the most complete information from the client." *In re Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d 204, 216 (Pa. 2014). If the asserted holder meets their burden to invoke the privilege, the opposing party

9

must prove an applicable exception. *Township of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 474 (Pa. Cmwlth. 2018). To invoke the privilege "the party asserting the privilege must show, by record evidence such as affidavits, []sufficient facts as to bring the [communications at issue] within the narrow confines of the privilege.[]" *Id.* (internal quotation marks, emphasis, and citation omitted). Government entities are entitled to assert this privilege and "may claim privilege for communications between their attorney and their agents or employees who are authorized to act on behalf of the entities." *Gould v. City of Aliquippa*, 750 A.2d 934, 937 (Pa. Cmwlth. 2000).

Although Mancini is correct that Mr. Kennedy did not represent the County in the mandamus action because the PAB, not the County, was Mancini's adversary, the County provided evidence that an attorney-client relationship exists generally between Mr. Kennedy and the County, including in matters relating to the PAB. Mancini cites *In re Estate of Paterno*[10] to support her argument that the evidence supplied by the County does not prove an attorney-client relationship was invoked. Common pleas addressed Mancini's reliance on *In re Estate of Paterno*, finding that case distinguishable from the present matter.

> There, Pennsylvania State University ("PSU") hired an outside law firm to represent a special task force that handled investigating PSU's handling of the Jerry Sandusky scandal. [*In re Estate of Paterno*, 168 A.3d] at 191. In a subsequent defamation suit filed by the Estate of Joe Paterno, among others, against the [NCAA] . . . and PSU, [the] plaintiffs sought documents containing communications between PSU and attorneys for PSU and the outside law firm representing the task force.

---

[10] Pennsylvania Superior Court cases are not binding on this Court; however, when such cases discuss analogous issues, they offer persuasive precedent. *Stahl v. Workers' Comp. Appeal Bd. (E. Hempfield Twp.)*, 242 A.3d 3, 13 n.6 (Pa. Cmwlth. 2020) (citing *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018)).

[The d]efendant's asserted that PSU, by extension, was represented by this outside law firm because, *inter alia*, PSU created the task force which has no legal identity or budget of its own. PSU also relied on the facts that it paid the task force's fees and that the chair of PSU's board of trustees, who was not a member of the task force, signed the engagement letter on behalf of PSU. The Superior Court ultimately found that PSU was not a client of the outside law firm that was representing the task force based upon the express language of the applicable engagement letter, which specifically stated that outside counsel represented the task force, not PSU. *Id.* at 195-[]97.

A review of the record for both appeals show that the instant matter is readily distinguishable from the facts of the [*In re*] *Estate of Paterno* case. To support its invocation of the attorney-client privilege, the County provided: (1) affidavits from Tim Brennan, Assistant County Solicitor, [] Solicitors to the PAB, William Kennedy, Esq.[,] other outside counsel, and the Northampton County Director of Administration; along with (2) contracts between the County and Ballard Spahr[] LLP and Montgomery, McCracken, Walker & Rhoads ("MMWR"), respectively.[] These documents show that outside counsel, such as Mr. Kennedy and his associates, **were retained to represent the County as a whole, includ[ing] the PAB as an arm of the County**. The Ballard Spahr contract shows that Mr. Kennedy, and his colleagues, were initially retained in April [] 2016. The Scopes and Services section of this contract states that "the County anticipates needing the services of highly qualified outside legal counsel to advise and assist with Human Resources related matters . . . the County **may** ask counsel to (1) conduct negotiations . . . (9) **represent the County** before the [PAB."] . . . Such language shows that the attorneys at Ballard Spahr were retained to **generally represent the County in any matters relating to employment law, which may include mandamus actions against an arm of the County such as the PAB**.[11]

Further, the County also entered into a contract with MMWR, the firm which Mr. Kennedy eventually went to, on August 8, 2018[,] to serve as general counsel. The Scope of Work and Objectives section of this contract states that the County was seeking counsel for multiple areas of expertise ranging from general litigation to election law that would

---

[11] Mancini admits that "the County retained [Mr.] Kennedy to litigate the mandamus action, ostensibly representing . . . the PAB," and that the "general terms of the contract [between the County and Ballard Spahr] could cover representation of the PAB[] or the County[.]" (Mancini's Br. at 12, 30.)

11

be supervised by the County Solicitor, or another attorney designated by the Solicitor. . . . These contracts, when taken together with the multiple affidavits submitted, show that Mr. Kennedy, and other outside counsel from Ballard Spahr and MMWR, **created an attorney-client relationship with the County and its officers, through which they came to represent the PAB in the underlying mandamus action**. Thus, communications between Mr. Kennedy, and his colleagues from Ballard Spahr and MMWR, the PAB and its Solicitors, and the County and its agents may be privileged under 42 Pa.C.S.[] § 5928 if they meet the remaining criteria.[12]

(Order at 11-13 (some emphasis added).) We agree with common pleas that *In re Estate of Paterno* is distinguishable based on the County's affidavits and contracts, which establish an attorney-client relationship between Mr. Kennedy and the County.

Mancini still contends, however, that the attorney-client privilege cannot be invoked by either the County or the PAB because there is an inherent conflict of interest if both the PAB and the County are clients of Mr. Kennedy, and thus the County cannot be a client and cannot invoke the attorney-client privilege. Mancini's argument rests on her assertion that if common pleas denied her mandamus action, the denial would act as an adjudication on the merits of her grievance. (Mancini's Br. at 13.) As common pleas explained, "the purpose of a mandamus action is to compel a governmental entity to perform a mandatory, ministerial duty. *See Chadwick v. Dauphin Cnty. Off. of* [] *Coroner*, 905 A.2d 600, 603 (Pa. [Cmwlth]. 2006." (Order at 14 n.14.) A mandamus action is not an adjudication of the merits. *See Sinkiewicz v. Susquehanna Cnty. Bd. of Comm'rs*, 131 A.3d 541, 546 (Pa. Cmwlth. 2015) ("[W]here a public official is clothed with discretionary powers, and

---

[12] Common pleas explained that it had "already decided that an attorney-client relationship exists between the County Solicitor's office and the PAB[,]" (Order at 13 n.13), based on its order entered September 19, 2018, located at pages 32a-42a of the Reproduced Record.

has exercised those powers, **mandamus will not lie to compel a revision of the decision resulting from such exercise of discretion, though in fact, the decision may be wrong**.") (internal quotation marks and citation omitted, some emphasis added). What transpired below is consistent with this notion. Mancini filed the complaint in mandamus seeking an order compelling the PAB to perform its mandatory, ministerial duty of issuing a decision, common pleas granted Mancini's complaint in mandamus and directed the PAB to issue a final decision in her grievance appeal, and the PAB issued its adjudication. But this did not equate to an adjudication of the merits, nor could it because mandamus cannot be used to direct the use of discretion in a particular way. *Sinkiewicz*, 131 A.3d at 546.

On the issue of the alleged conflict of interest, common pleas explained that

> [u]nder the Northampton County Home Rule Charter, the PAB's function is to hear appeals from career service employees regarding the County's employment decisions such as those to demote, suspend, or dismiss and is invested with the power to "sustain or dismiss an appeal, to modify a penalty, to award back pay, and to reinstate an employee." [(]Northampton County Home Rule Charter[, Article XI[,] § 1105)]. **Any conflict of interest between the County and the PAB lies within these discretionary powers, not as to whether the PAB was required to issue a written decision pursuant to Career Service Regulation No. 15.02 and employee policy No. 3.15.[] The mandamus action upon which these RTKL requests center do not implicate the PAB's ability to exercise these discretionary powers and are wholly separate from the merits of a grievance claim.** While communications between the County and the PAB regarding the merits of any underlying grievance action would not be privileged, the [trial c]ourt finds that, in the context of the mandamus action,[] [Mr. Kennedy]'s representation of the County and the PAB does not present an inherent conflict that would eviscerate the attorney-client relationship. Accordingly, the attorney-client privilege is applicable in this matter and exempts the disclosure of certain material as stated in the table appended [] as Exhibit "A."

13

(Order at 13-14 (footnotes omitted, emphasis added).) We discern no error of common pleas' above reasoning as the evidence provided by the County shows that the attorney-client privilege was properly invoked, and that no conflict of interest prevented the invocation of the privilege where Mr. Kennedy represented the PAB in the mandamus action, which had nothing to do with the merits of the underlying grievance appeal against the County.

### 3. Attorney-Work Product Doctrine

The attorney-work product doctrine, "while closely related to the attorney-client privilege, provides broader protection." *Levy v. Senate of Pa.*, 94 A.3d 436, 443 (Pa. Cmwlth. 2014). The attorney-work product doctrine is described in Pennsylvania Rule of Civil Procedure 4003.3, Pa.R.Civ.P. 4003.3, and precludes "disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." Under the RTKL, "the doctrine protects the []mental impressions, theories, notes, strategies, research and the like created by an attorney in the course of his or her professional duties, particularly in anticipation or prevention of litigation[] from disclosure." *Levy*, 94 A.3d at 443 (internal quotation marks and citation omitted). "[T]he work product doctrine is waived when the work product is shared with an **adversary**, or disclosed in a manner which significantly increases the likelihood that **an adversary or anticipated adversary will obtain it**." *BouSamra v. Excela Health*, 210 A.3d 967, 978 (Pa. 2019) (emphasis added).

Mancini also challenges common pleas' conclusion that even if the County did not establish the attorney-client privilege, the attorney-work product doctrine would apply to many of the requested communications because the attorney-work

14

product doctrine was waived through disclosure of communication to the County. Again, common pleas' analysis is persuasive:

> [Mancini] does not specifically fault the OOR for finding that certain documents constitute work[ ]product under Pennsylvania law. She does, however, summarily contend that any work[ ]product privilege has been waived. The [trial c]ourt readily disagrees. Even if the County, and members of its executive branch, were strangers to the attorney-client relationship between the several contract attorneys, County Solicitors, and the PAB, the record does not show that such material was either **disclosed to [Mancini], as the adversary in the mandamus matter, or that its disclosure increased the likelihood that [Mancini] would obtain it.** Thus, where applicable, the [trial c]ourt finds that the work product doctrine has not been waived.

(Order at 16-17 (emphasis added).) Mancini maintains that if the County had become a party to the mandamus action, it would have stood in the same shoes as she and would have potentially been an adverse party to the PAB. However, the County did not bring the mandamus action against the PAB, Mancini did—making her the adverse party. Thus, disclosure of communications to the County does not waive the attorney-work product doctrine.

## III. CONCLUSION

We discern no error or abuse of discretion in common pleas' conclusions that the attorney-client privilege and attorney-work product doctrine applied in this matter. Therefore, common pleas' Order is affirmed.

_____
**RENÉE COHN JUBELIRER,** President Judge

Judge Wallace did not participate in this decision.

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jill Mancini,                               :
                    Appellant               :
                                            :
            v.                              :   No.  1292 C.D. 2022
                                            :
County of Northampton Personnel             :
Appeals Board                               :

# O R D E R

    **NOW**, June 7, 2024, the Order of the Court of Common Pleas of Northampton County, entered October 17, 2022, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge