# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Miller, :
                Appellant :
          :
           v. : No. 595 C.D. 2023
          : Submitted: August 9, 2024
County of Lancaster :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**       **FILED: April 11, 2025**

Michael Miller (Miller), proceeding pro se, appeals from an order of the Court of Common Pleas of Lancaster County (common pleas) dated May 12, 2023, which sustained, in part, the preliminary objections of the County of Lancaster (County), and dismissed Miller's "Verified Petition to Enforce an Order by the Office of Open Records [(OOR)]" (Petition).[1] Miller contends common pleas erred in concluding that County could impose access conditions on his ability to review mail-in ballots and envelopes in person as ordered by OOR. Miller also argues that common pleas erred in construing the Petition as an action in mandamus. County contends it complied with OOR's Final Determination because the seven access conditions County imposed to safekeep the voter records and documents under inspection were authorized under the Pennsylvania Election Code (Election Code).[2] After careful review, we affirm.

---

[1] The Petition is located on pages 21a through 27a of the Reproduced Record.
[2] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

## I.  BACKGROUND

The facts are not in dispute.  This matter began with Miller's request filed pursuant to the Right-to-Know Law (RTKL)[3] seeking "inspection of all original mail-in ballots and envelopes received from voters in Lancaster County for the 2022 Primary Election" (Request).  (Reproduced Record (R.R.) at 1a.)  County granted, in part, Miller's Request, allowing Miller to conduct a partial in-person inspection of the requested mail-in ballot envelopes, excluding declarant signatures or information related to military electors.  (R.R. at 3a.)[4]  Miller's Request was denied as to all other requested materials.  Miller appealed County's determination to OOR, which granted, in part, Miller's administrative appeal and ordered County to provide Miller access "to the requested documents, including the ballot envelope signatures, **subject to the provisions of the Election Code**" within 30 days.  (Final Determination at 10, R.R. at 16a (emphasis added).)[5]  Neither party appealed the Final Determination.

**On the same day** the Final Determination was issued, County sent Miller a letter via email, granting Miller access to the requested voter records, subject to seven conditions, stating the conditions were pursuant to Section 308 of the Election Code, 25 P.S. § 2648, to ensure the proper regulation for safekeeping of the records.  The seven conditions were as follows:

1) One person shall inspect at a time.  No groups.

2) A person inspecting shall sign a sheet provided by [] County upon each visit noting the time of arrival and the time of departure.

---

[3] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[4] Miller only included the first page of County's response.  The full response, totaling two pages, is located in the Original Record.

[5] OOR denied the request for mail-in ballots and envelopes of military electors.

3) Requests to inspect shall be scheduled in advance . . . . Appointments of up to 2-hour duration will be scheduled at times when Voter Services staff can be present to monitor the inspection process, in accordance with 25 P.S. [§] 2648 of the Election Code[,] which states that public inspection of records shall only occur in the presence of a member or authorized employee of the board of elections.

4) A person inspecting shall inspect only 1 batch of records at a time, in order to preserve their organizational integrity.

5) No writing implements shall be permitted near the records. Records must be inspected on one side of the room, and notes must be taken on the opposite side of the room.

6) No photography or video shall be permitted.

7) [] County reserves the right to have a Sheriff's deputy or its designee present.

(R.R. at 19a.)

Instead of inspecting the requested voter records at County's board of elections office under the access conditions that were imposed, appealing the Final Determination, or submitting a petition for reconsideration of the Final Determination to OOR, Miller filed the Petition with common pleas, seeking, among other things, declaratory relief, an order directing County to provide Miller with a high-speed scanner, to inspect and copy the requested records, a gag order on County,[6] and an order "specifying the conditions of the inspection . . . [that] place[s] no greater demands on [Miller] than those named in the [Final Determination]." (*Id.* at 26a.) In response, County filed preliminary objections, asserting that parts of the

---

[6] In the Petition, Miller requests that common pleas order that "[t]he COUNTY shall not make a defamatory public statement, written or oral, about [Miller] regarding this matter." (R.R. at 26a.) Common pleas indicated that this demand effectively amounted to a request for a gag order on County. (Common Pleas' Op. at 8, R.R. at 69a.) We note that nothing in the RTKL or OOR's Final Determination allows for a gag order on County.

3

Petition should be struck for inclusion of scandalous and impertinent material and also demurring. (*Id*. at 28a-37a.) Miller answered, asserting multiple arguments, specifically, that the Petition contains sufficient factual information to assert a claim for mandamus, that there was not scandalous or impertinent material alleged in the Petition, and that the Final Determination did not "grant[] [] [County's] officers the authority to create and impose its own terms for access to the[] records." (*Id*. at 49a-57a.)

On May 12, 2023, common pleas sustained County's preliminary objections, in part, and dismissed Miller's Petition with prejudice. (Common Pleas' Opinion (Op.) at 1-11, R.R. at 62a-72a.) Importantly, common pleas resolved to treat the Petition as one sounding in mandamus reasoning that it contained the essential prerequisites for a mandamus action.[7] However, common pleas also stated that "[b]oth parties agree that an action in mandamus is not available to establish legal rights, and is only appropriate to enforce rights that have already been established." (*Id.* at 8, R.R. at 69a.) "Consequently, an action in mandamus cannot be used in this Court to establish any right of [Miller] to use [County's] scanner, impose a gag[]order on [County], or prohibit anyone else from reviewing public records." (*Id*.) Additionally, common pleas determined that County complied with OOR's Final Determination "by making the records available to [Miller] subject to the regulations it deems necessary for safekeeping," as permitted under the Election Code. (*Id*. at 10-11, R.R. at 71a-72a.)[8] Common pleas concluded, based on this

---

[7] Common pleas overruled County's first preliminary objection because it determined that an action in mandamus was the appropriate method for resolving Miller's claims since there is no other adequate remedy at law. (Common Pleas' Op. at 7-8, R.R. at 68a-69a.)

[8] County's second preliminary objection also alleged the inclusion of scandalous and impertinent information under Pennsylvania Rule of Civil Procedure 1028(a)(2), Pa.R.Civ.P. 1028(a)(2). (R.R. at 33a-34a.) However, while Miller asserts that common pleas erred in ruling

analysis, that dismissal of Miller's Petition was appropriate. (*Id*. at 11, R.R. at 72a.) Miller appealed to this Court.

## II. PARTIES' ARGUMENTS

### A. Miller's Arguments

On appeal, Miller presents multiple arguments.[9] Miller first argues that common pleas erred in treating the Petition as an action in mandamus, asserting it should have been an appellate matter. (Miller's Brief (Br.) at 8-9.) As such, Miller argues common pleas was bound by the record before OOR and could not permit County to argue matters not previously asserted before OOR. (*Id*. at 12.) Miller also contends that it was error to conclude that County was granted the authority to create proper regulations for safekeeping, pursuant to Section 308 of the Election Code. (*Id*. at 13.) Miller further asserts that because Section 308 does not define the term "safekeeping," and because Section 309 of the Election Code, 25 P.S. § 2649,[10] purportedly does define the term, the Legislature intentionally omitted the definition of safekeeping in Section 308 and common pleas could not "supply an

_____

on this issue, a review of common pleas' opinion indicates that it did not reach the issue of the inclusion of scandalous or impertinent information in the opinion. (Miller's Brief (Br.) at 10-11, Common Pleas' Op at 8-9.)

[9] We have consolidated and reordered Miller's arguments for ease of discussion.

[10] Section 309 of the Election Code provides as follows:

> All documents, papers and records in the office of the county board of elections of each county shall be preserved therein for a period of at least eleven (11) months, and all official ballots and the contents of ballot boxes shall be preserved therein for a period of at least four (4) months; in the event the county board has been notified in writing by the district attorney of the county, or by a judge of a court of record, to preserve said papers or contents of ballot boxes for a longer period of time, for the purposes of pending prosecution or litigation, said records shall be preserved accordingly.

25 P.S. § 2649.

5

omission." (*Id*. at 13-14.) Miller also claims the term "safekeeping" is unambiguous, thus, making common pleas' deference to an agency interpretation improper where the statute is clear. (*Id*. at 15.) Miller further asserts that allowing County to create access conditions on public voting records creates an absurd result.

In addition, Miller contends that common pleas erred in finding that County complied with the Final Determination. (*Id*. at 16-20.) Miller asserts that the Final Determination only allowed County to provide inspection and copies of the voter records subject to four conditions, and that anything more than those four conditions is an "unauthorized restraint[] on [Miller's] access." (*Id*. at 17.) Finally, Miller contends that common pleas erred in sustaining County's demurrers for various reasons, including that the preliminary objections challenged relief, not facts, were not scandalous or impertinent, and were based on matters not before the court, and that County and common pleas violated Miller's rights under the First and Fourteenth Amendments to the United States Constitution, U.S. CONST. amends. I, XIV. (*Id*. at 9, 11, 21-25.)[11]

### B. County's Arguments

In rebuttal, County first contends that it was not error to treat Miller's Petition as an action in mandamus because under this Court's precedent, where a requester has not appealed a final determination, enforcement of OOR's determinations on a local agency should be reviewed under the mandamus standard. (County's Brief (Br.) at 10-14.) County also asserts that it was proper for common pleas to consider

---

[11] On December 21, 2024, Miller filed a post-submission communication on the docket pursuant to Pennsylvania Rule of Appellate Procedure 2501(b), Pa.R.A.P. 2501(b), directing the Court to its recent decision in *Allegheny County v. Van Bibber* (Pa. Cmwlth., Nos. 379 C.D. 2023, 380 C.D. 2023, filed December 17, 2024), and indicating that this decision supports Miller's position on appeal.

the Petition in its original jurisdiction, instead of appellate jurisdiction, because the Final Determination was not appealed, and enforcement actions are properly within common pleas' original jurisdiction. (*Id*. at 13.)

County next contends that common pleas properly determined that County complied with the Final Determination for the following reasons. (*Id*. at 16-22.) First, the language of the Final Determination provided Miller access pursuant to the Election Code, so County's imposition of access conditions, established through the discretion allotted to County under Section 308 of the Election Code, were proper. (*Id*. at 17-18.) Miller was also provided access within the required timeframe as mandated by the Final Determination. (*Id*.) Next, "[t]o the extent the Petition is construed as . . . challenging . . . County's imposed [c]onditions as 'proper regulation for safekeeping of the [requested documents]' under Section 308 of the Election Code, Pennsylvania law is clear that . . . mandamus will not lie to compel a public official to exercise discretion in a particular manner." (*Id*. at 19.) County analogizes this matter to *Chadwick v. Dauphin County Office of the Coroner*, 905 A.2d 600 (Pa. Cmwlth. 2006), where we held that mandamus would have been appropriate to compel the coroner to issue a conclusion had the coroner not already issued one. (County's Br. at 20.) In line with *Chadwick*, it would be inappropriate to compel County to comply with the Final Determination because County already complied. (*Id*. at 20-21.)

Finally, County asserts that Miller's constitutional issues are not properly before this Court because they were raised for the first time on appeal, and, as noted by common pleas in its Pennsylvania Rule of Appellate Procedure Rule 1925(a), Pa.R.A.P. 1925, Opinion, the purported constitutional violations were vague and uncertain. (*Id*. at 22-23 (citing *Steiner v. Markel*, 968 A.2d 1253 (Pa. 2009)).)

Alternatively, should this Court consider the constitutional issues, County asserts that Miller's arguments are meritless because County did not prohibit Miller from reviewing the subject voter records, but rather permitted access to Miller pursuant to the Election Code, Miller does not challenge the constitutional validity of the Election Code, and RTKL requesters are not a constitutionally protected class under the equal protection framework. (*Id*. at 23.)

## III. DISCUSSION[12]

We recognize that Miller is attempting to enforce an OOR determination against a local agency. Unfortunately, although there is an enforcement procedure for Commonwealth, legislative, and judicial agencies, there is **no** such procedure for local agencies. *See* Pennsylvania Rule of Appellate Procedure 3761, Pa.R.A.P. 3761. The RTKL does not contain a statutory remedy to enforce an OOR determination against a local agency. Our precedent has, therefore, found it appropriate for such petitions to be considered under mandamus standards. *See, e.g.*, *Capinski v. Upper Pottsgrove Township*, 164 A.3d 601, 609 (Pa. Cmwlth. 2017) ("[M]andamus is the action to file where the requester has not appealed the final determination to a court for a merits review and [instead] seeks compliance with a final determination of [] [OOR].").[13] *See also Hahn v. Wilmington Township, Lawrence County* (Pa. Cmwlth.,

---

[12] In general, "our review when considering the grant or denial of mandamus is limited to determining whether the trial court abused its discretion or committed an error of law." *Cooper v. City of Greensburg*, 363 A.2d 813, 815 (Pa. Cmwlth. 1976). Where the issue on appeal relates to the trial court's conclusion "that a plaintiff has failed to state a cause of action in mandamus," rather than the propriety of granting or denying mandamus itself, that conclusion "is subject to plenary review, inasmuch as the [trial] court has decided that the complaint, as a matter of law, does not make out a claim for relief." *Jackson v. Vaughn*, 777 A.2d 436, 438 (Pa. 2001) (citation omitted).

[13] Unlike the enforcement procedure for final determinations of OOR that relate to Commonwealth agencies, legislative agencies, and judicial agencies, which is set forth in

8

No. 1364 C.D. 2022, filed May 17, 2024) (trial court had proper subject matter jurisdiction to consider and resolve a petition to enforce an OOR determination as an action in mandamus).[14]

Mandamus is an appropriate remedy where there is a clear right to access the records and a duty on the agency to make those records available. Common pleas held that Miller sufficiently pled the prerequisites of mandamus in the Petition and, as such, considered Miller's Petition under the mandamus standard. (Common Pleas' Op. at 7, R.R. at 68a.)[15] Miller's Petition averred that OOR issued the Final Determination and that County did not comply, instead imposing access terms that purportedly restricted Miller's ability to access the subject voter records.

Pennsylvania Rule of Appellate Procedure 3761, there is no rule for the enforcement of OOR determinations that relates to *local* agencies. *See generally* Pa.R.A.P. 3761(b). The Official Note to Rule 3761 states, in pertinent part, that "[t]his [procedure] differs from proceeding in the courts of common pleas, where the method to obtain judicial review of alleged failure to comply with a final determination of [OOR] may be an action in mandamus or other petition authorized by local rule. *Capinski[,* 164 A.3d 601]" Pa.R.A.P. 3761, Note; *see also Roddy v. Pa. Off. of the Governor* (Pa. Cmwlth., No. 561 M.D. 2020, filed Dec. 15, 2020), slip op. at 8 (single-judge op.) ("[T]he amendments to Pa.R.A.P. 3761 just clarified the well-settled principle that, '[a]s a party to the underlying proceeding, [a requester] may seek enforcement of [] OOR's [d]isclosure [o]rder through a petition to enforce.'"). Recently, in *Cruz v. Pottsville Police Department* (Pa. Cmwlth., No. 244 C.D. 2023, filed September 18, 2023), we explained that "neither our Rules of Appellate Procedure nor the RTKL itself provides a remedy for a requester who seeks enforcement against a *local* agency, . . . [and] [i]n the absence of a statutory remedy, this Court has held that the proper vehicle to seek enforcement against a local agency is an action in mandamus." Slip op. at 7 (citing *Capinski*, 164 A.3d at 609).

[14] Unreported opinions of this Court issued after January 15, 2008, may be cited for their persuasive value. *See* Pa.R.A.P. 126(b)(1)-(2); 210 Pa. Code § 69.414(a).

[15] In accordance with our decision in *Capinski*, when a petition to enforce contains the essential prerequisites for an action in mandamus, it is proper for a trial court to treat such a petition as a mandamus action. *See Capinski*, 164 A.3d at 606 ("Where there has been a final determination of the [OOR] that the requested records are disclosable, then the requester has established a clear right to have the agency produce those public records."); *contrast with Anand v. Pa. Ins. Dep't* (Pa. Cmwlth., No. 318 M.D. 2023, filed Oct. 11, 2024), slip op. at 12 (holding that a requester had no clear right to relief and the Insurance Department had no corresponding duty to perform because OOR did not compel disclosure of any records withheld by the Insurance Department).

Of course, the problem with considering the Petition as an action in mandamus is that "[t]he writ of mandamus is an extraordinary remedy which exists to compel official performance of a ministerial act or a mandatory duty." *Banfield v. Cortes*, 110 A.3d 155, 175 (Pa. 2015). Moreover, "[w]here the action sought to be compelled is discretionary, mandamus will not lie to control that discretionary act, . . . but courts will review the exercise of the actor's discretion where it is arbitrary or fraudulently exercised or is based upon a mistaken view of the law." *Id*.

"The burden of proof falls upon the party seeking this extraordinary remedy to establish [the] legal right to such relief." *Sinkiewicz v. Susquehanna County Bd. of Comm'rs*, 131 A.3d 541, 546 (Pa. Cmwlth. 2015) (citation omitted). "To state a claim for mandamus, a petitioner must establish . . . (1) a clear legal right to relief in the petitioner; (2) a corresponding duty in the respondent; and[] (3) the lack of any other adequate and appropriate remedy." *Baron v. Dep't of Hum. Servs.*, 169 A.3d 1268, 1272 (Pa. Cmwlth. 2017) (citation omitted). "Mandamus is not available to establish legal rights but only to enforce rights that have been established . . . [and] [a]s a high prerogative writ, mandamus is rarely issued and never to interfere with a[n] [agency's] exercise of discretion." *Sinkiewicz*, 131 A.3d at 546 (citations omitted). Here, OOR's Final Determination required County to provide access to Miller "**subject to the provisions of the Election Code**." It is the provisions of the Election Code that provide County the authority, and the duty, to impose the access restrictions.

Section 308 of the Election Code, 25 P.S. § 2648, sets forth the public inspection provisions for voter records as follows:

> The records of each county board of elections, general and duplicate returns, tally papers, affidavits of voters and others, nomination petitions, certificates and papers, other petitions, appeals, witness lists,

10

accounts, contracts, reports and other documents and records in its custody, except the contents of ballot boxes and voting machines and records of assisted voters, shall be open to public inspection, except as herein provided, and may be inspected and copied by any qualified elector of the county during ordinary business hours, at any time when they are not necessarily being used by the board, or its employes having duties to perform thereto: **Provided, however, That such public inspection thereof** shall only be **in the presence of** a member or authorized employe of the county board, and **shall be subject to proper regulation for safekeeping of the records and documents**, and subject to the further provisions of this act: And provided further, That general and duplicate returns, tally papers, affidavits of voters and others, and all other papers required to be returned by the election officers to the county board sealed, shall be open to public inspection only after the county board shall, in the course of the computation and canvassing of the returns, have broken such seals and finished, for the time, their use of said papers in connection with such computation and canvassing.

25 P.S. § 2648 (emphasis added); *see also Austin v. Dauphin County. Bd. of Elecs.*, 79 Pa. D. & C. 562, 566 (1952) (entering summary judgment in a mandamus action and ordering the public inspection of voter certificates and district registers **subject to** the business hours mandate in Section 308 of the Election Code) (emphasis added).

Miller has asked to inspect absentee and mail-in ballots and the envelopes in which they were mailed. Section 308 specifically limits public inspection by providing "[t]hat such public inspection thereof shall **only** be in the presence of a member or authorized employe of the county board, and **shall** be **subject to proper regulation for safekeeping of the records and documents**, and subject to the further provisions of this act . . . ." Section 308 makes clear that the public inspection shall **only** be in the presence of an employee or member **of the county board** and in the same sentence requires such inspection to be subject to proper **regulation**. This language leads to the inescapable conclusion that it is the county board that is tasked

with the safekeeping of the records and with the obligation to properly regulate the inspection being done in its office in the presence of its employee.

We note that counties vary in how they maintain the absentee and mail-in ballots, and the envelopes in which they arrived. Some counties scan the ballots and maintain them electronically; the County of Lancaster does not. Thus, at issue here are the original ballots that were completed by voters and the original envelopes in which they were mailed. It is understandable that the safekeeping of these original ballots and envelopes, depending on the way they are maintained, could require different regulation than would scanned copies of the originals. Thus, it is understandable that the Legislature would have intended the county boards to regulate the public inspection.[16] As common pleas reasoned, "[t]he Election Code does not specify what 'proper regulation for safekeeping' consists of, thereby leaving it to the agency's discretion. If the Legislature intended to mandate how records should be properly regulated for safekeeping, it would have done so." (Common Pleas' Op. at 10, R.R. at 71a.) Because County had the authority to impose

---

[16] Section 2642(f) of the Election Code grants county boards of the election the power "[t]o make and issue such rules, regulations and instructions, not inconsistent with law, as they may deem necessary for the guidance of voting machine custodians, elections officers and electors." 25 P.S. § 2642(f). In *In re Canvassing Observation*, 241 A.3d 339, 350 (Pa. 2020), our Supreme Court, while analyzing a different section of the Election Code, did "deem the absence of proximity parameters to reflect the legislature's deliberate choice to leave such matters to the informed discretion of county boards of elections, who are empowered by Section 2642(f) of the Election Code." Similarly, in *Clarke v. House of Representatives*, 957 A.2d 361, 364 (Pa. Cmwlth. 2008), we opined that "[i]n *Nutter* [*v. Dougherty*, 938 A.2d 401, 416 (Pa. 2007)], our Supreme Court found that because the Election Code addressed certain subjects on an extremely comprehensive level, its failure to address campaign finance limits indicated that the [Legislature] did not intend to foreclose local regulation in that arena." *See also Banfield*, 110 A.3d at 174 ("[A] reviewing court will ordinarily defer to an agency's interpretation of a regulation or a statute it is charged to enforce.") (internal quotation marks and citation omitted); *In re Guzzardi*, 99 A.3d 381, 386 (Pa. 2014) ("[T]he judiciary should act with restraint, in the election arena, subordinate to express statutory directives.").

12

conditions on Miller's public inspection of the subject voter records, mandamus cannot issue. *See Coady v. Vaughn*, 770 A.2d 287, 290 (Pa. 2001) ("[M]andamus will not lie where the substance of the [] discretionary action is the subject of the challenge.").

Where an agency refuses to exercise its discretion, mandamus may issue to compel the exercise of such discretion but it cannot be used to compel an agency to exercise its discretion in a specified or desired manner. *See Pa. Dental Ass'n v. Ins. Dep't*, 516 A.2d 647, 652 (Pa. 1986) ("[A] court may direct that discretion be exercised[;] it may not specify *how* that discretion is to be exercised nor require the performance of a particular discretionary act."); *see also Drack v. Tanner*, 172 A.3d 114, 119 n.8 (Pa. Cmwlth. 2017) ("Where the public official has discretion in how to perform the act, mandamus may compel the exercise of discretion, but it may not interfere with the manner in which the discretion is exercised.").

Common pleas held that "pursuant to 25 P.S. § 2648, [County] has complied with [] OOR's [F]inal [D]etermination and has rightfully exercised its discretion by establishing conditions that all individuals must comply with when inspecting public records." (Rule 1925(a) Opinion (Op.) at 4, R.R. at 79a.) Common pleas noted that "the same day the [F]inal [D]etermination was issued, [County] emailed [Miller] . . listing conditions for viewing the records and stated the process 'may require adjustments to the above rules and requirements, to the extent necessary to ensure order, and to preserve the [] records and [] organizational integrity.'" (Rule 1925(a) Op. at 7, R.R. at 82a.) In fact, County "immediately acknowledged its duty by reaching out to [Miller] and inviting him to access the requested records subject to certain conditions." (1925(a) Op. at 8, R.R. at 83a.) We must, therefore, agree with common pleas that County did comply with OOR's unappealed Final

Determination, which ordered access to the records, subject to the provisions of the Election Code.[17]

## IV.  CONCLUSION[18]

For the foregoing reasons, we discern no error in common pleas' dismissal of Miller's mandamus action.[19]  Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER**, President Judge

---

[17] We note that OOR's Procedural Guidelines provide that OOR will accept Petitions for Reconsideration of its Final Determinations, if filed within 15 days after the issuance of a Final Determination, and will follow the procedures set forth in the General Rules of Administrative Practice and Procedure (GRAPP), 1 Pa. Code § 35.241.  _See_ Section VIII of OOR's Procedural Guidelines. Such a Petition might have allowed Miller to either challenge the access conditions, or clarify County's obligation under OOR's Final Determination.

[18] Because Miller is not entitled to mandamus relief, and because we find that common pleas properly dismissed Miller's action, we need not consider Miller's remaining arguments.

[19] Pursuant to Pennsylvania Rules of Appellate Procedure 123 and 1532, Pa.R.A.P. 123, 1532, Miller filed a "Motion for Partial Summary Judgment" (Motion).  However, Rule 1532 is inapplicable here because, by its own terms, it does not apply to the instant appeal, which was brought pursuant to a notice of appeal from a common pleas' order, rather than a petition for review from an agency determination.  _See_ Pa.R.A.P.  1501(b) ("This chapter does not apply to any appeal within the scope of[] . . . Chapter 9 [of the Pennsylvania Rules of Appellate Procedure.]").  Instead, this appeal is governed by Chapter 9 of the Pennsylvania Rules of Appellate Procedure, which does not authorize the filing of an application for summary judgment on appeal.  _See M.R. Mikkilineni v. Amwest Surety Ins. Co._, 919 A.2d 306, 311 (Pa. Cmwlth. 2007) ("[A]n appeal from a court of common pleas is governed by Chapter 9 of the Rules of Appellate Procedure.").  Therefore, because summary judgment is not authorized in an appeal taken from an order of common pleas, the Motion is improper and thus stricken from the record.  In addition, on February 19, 2025, Miller filed another application for relief entitled, "Application to Compel Ruling on Motion for Summary Judgment" (Application to Compel), in which Miller seeks a disposition of the Motion.  However, because the Motion was stricken from the record, there is no ruling to compel, and, thus, the Application to Compel is dismissed as moot.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Miller,                          :
                    Appellant           :
                                         :
              v.                         :    No.  595 C.D. 2023
                                         :
County of Lancaster                      :

# O R D E R

   **NOW**, April 11, 2025, the Order of the Court of Common Pleas of Lancaster County, entered in the above-captioned matter, is hereby **AFFIRMED**.  The Motion for Partial Summary Judgment filed by Appellant Michael Miller is hereby **STRICKEN** as unauthorized, and the Application to Compel is **DISMISSED** as moot.

                                _____
                                **RENÉE COHN JUBELIRER,** President Judge